**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| IN RE: | : | |
| PEGASUS RESTAURANT GROUP, LLC. | : | Case No.24-11072-KHK |
| Debtor | : | Chapter 11 |
| | : | |

## PLAN OF REORGANIZATION UNDER SUBCHAPTER V

COMES NOW the debtor, PEGASUS RESTAURANT GROUP, LLC, by counsel, and submits the following Plan of reorganization under 11 U.S.C. 1190 (Subchapter V).

<u>DISCLOSURE PURSUANT TO 11 U.S.C.1190(1)(A)</u>

The purpose of this disclosure is to provide parties with a brief history, status of, and insight into the business operations of the Debtor. This disclosure should provide parties with the information required under 11 U.S.C. 1190.

This disclosure sets forth certain information regarding the debtors' assets, pre-petition history, significant events that have occurred in this case and other sections of this Plan which describe the debtor's anticipated financial affairs after confirmation.  Creditors and other parties in interest are

1

advised to read the Plan carefully and obtain the advice of independent legal counsel if desired.

### DISCLAIMER

All parties are advised and encouraged to read this Plan in its entirety before voting to accept or reject the Plan.

This Plan contains summaries of certain provisions and certain valuations and other financial information, and certain events related to the Debtor's Chapter 11 case. Although the Debtor believes that this information is accurate, such summaries are qualified to the extent that they are summaries and do not set forth the entire text of documents or schedules referred to. The factual information contained in this Plan has been provided by the debtor and its agents in good faith after a reasonable investigation of the matters reported on herein, but the Debtor is not able to warrant or represent that the information contained herein, including the financial information, is without any inadvertent inaccuracy or omission.

Certain information contained in portions of this Plan, including estimates, assumptions, and projections may not be borne out by future events. Except as specifically noted, this Plan does not reflect any events or conditions that may occur after this date, nor has the information contained herein been

audited by a certified public accountant and may not be in accord with general accounting principles.

The information contained in this Plan has been provided by the Debtor, its attorney, and their agents.

## HISTORY AND DESCRIPTION OF THE DEBTOR

The Debtor is an Limited Liability Corporation organized and chartered in 2020 with its principal place of business in the City of Leesburg, Virginia. It is owned by Rebecca Metzgar (60%) and Nalyana Penprachum (40%)and is managed by Rebecca Metzgar's son, the designee in this case, Neil Metzgar.

The Debtor operates two popular Asian restaurants, one in Leesburg and the other in Middletown, Virginia. While the Debtor's trade was affected by the pandemic, it is now returning to its pre-pandemic level. At the same time, the Debtor used some of its profits generated in the preceding years for investments which did not turn out as expected. During the pandemic, and until the filing of this petition, the Debtor fell increasingly behind in paying its Federal payroll taxes and its Virginia Sales Tax. To make matters worse, the Debtor took out several high-interest loans, styled as merchant cash advances, which only pushed it further into debt and drained its resources though their automatic withdrawals from its operating account.

Since its filing, the Debtor has remained current on its payroll tax and sales taxes. It is, and always has been, current on the rent for its leases, both of which have been assumed.

The Debtor, working through its accountant, has prepared all missing tax returns and payroll reports, which allows it to provide for the full payment of all priority tax claims through this Plan. The Debtor has also made several changes to its operations which will increase its net cash flow and make performance of the plan feasible. These changes include reducing its management staff, which saves almost ten thousand dollars a month, and adding pass-through charges for credit card sales and 3rd party food delivery fees, all of which in the past were absorbed into overhead.

## PRESENT AND PROJECTED EARNINGS

The Debtor's projections of its monthly income and expenses are reflected in the attached Exhibit A "Projections". As one might expect, the restaurant business is somewhat cyclical, with Winter months providing potentially less revenue and profit than other months. However, the projections take this into account and are designed to estimate what the Debtor could afford to pay at a consistent level each month by keeping a reserve to cover payments during the slack times.

The Debtor anticipates that it will be able to make all of the payments provided for both inside and outside this Plan, as well as cover its normal operating expenses from its net surplus over the Plan term. The Debtor further submits that it is devoting all of its net surplus during the prosed term to the payments provided for under this Plan.

## FILED AND SCHEDULED CLAIMS

The Debtor is current with all payments due post petition creditors, is current on all of its tax filings, wages, and other non-administrative post-petition priority claims, with the exception of unapplied-for fees owing to the Debtor counsel, its accountant, and the Sub-Chapter V trustee.

### Administrative Claims

The administrative claims include the Debtor's attorney and accountant, and the Sub-Chapter V Trustee.

### Priority Claims

There are two types (sub-classes) of priority (non-administrative) claims.  The first is held by the Internal Revenue Service (IRS) and the Virginia Department of Taxation (scheduled at $430,000.00), and the second is comprised of a variety of priority wage claims held by some of the Debtor's employees, Elena Baluyot ($450.00), Feng You ($1,610.00), Heather

5

Polston ($860.00) , Holly Metzger ($5,500.00), and Alexi Naawananuruk ($1,215.00), all of which total $9,635.00.

## Secured Claims

The Debtor has one secured creditor, Union Funding Source, Inc. (filed claim 3), in the amount of $51,226.19, which is placed into its own class. This creditor also has an unsecured claim in the amount of $33,434.44, which is included among the Class 5 claims.

## Unsecured Claims

The filed, reclassified, and scheduled non-contingent unsecured claims without priority, total $271,357.39. This includes the reclassified unsecured claim of Union Funding Source ($33,434.44), the reclassified, claim of Advantage Platform Services (scheduled, not filed), in the amount of $80,000.00[1], the filed claim of Tyler, Bartl & Ramsdell, PLC of $675.00, the scheduled, non-priority wage claims of Feng You ($33,130.00), and the filed unsecured claim of the IRS ($124,117.95).

---

[1] Advantage filed a UCC Financing Statement which post-dates the Financing Statement filed by Union Funding Source. Since Union's claim is split between secured and unsecured, with the secured amount being the sum value of all of the Debtor's assets, there is no collateral remaining to which Advantage's lien could attach and it is therefore hereby reclassified as wholly unsecured.

## LIQUIDATION ANALYSIS

An unsecured creditor without priority would not receive any distribution under a hypothetical Chapter 7.

If the Debtor were liquidated by a trustee in a case under chapter 7 at the time of this Plan, the estate available to unsecured creditors would include nothing, since all of the Debtor's assets are secured by the perfected claim of Union Funding Source.

In addition, the administrative claims to be paid ahead of the unsecured claims might be as much as $80,000.00[2], including the estimated fee of a disbursing agent (should this not be a consensual plan), the Subchapter V trustee's fees, and fees to the Debtor's counsel and accountant.

By contrast, the Debtor's Plan proposes monthly payments over sixty months totaling $1,020,000.00 and a contribution from Neil Metzgar of $375,000.00. It is estimated that this combined funding will allow for a distribution to unsecured creditors in the amount of %15 of their claims.

---

[2] The Debtor cannot know at this point exactly what the future administrative fees may be, because it cannot foresee what tasks the professionals will need to perform in order to bring its Plan to confirmation. The figure given here is only a good-faith best estimate and is not intended as a restriction on administrative claims. However, the Debtor's counsel will file an Interim Application for payment, likely before the time to return ballots, and this Application, which will be distributed to all creditors, will serve as an advisement as to what the total fee may be.

These calculations, and the projected percentage of distribution to unsecured creditors, are based on what is known to the Debtor at the time this Plan is filed, and should be considered as a good faith estimate. Future events, unforseen or unknown, including administrative expenses beyond what are presently provided for, could unfavorably affect the percentage of distribution to unsecured creditors.

## MANAGEMENT AND OWNERSHIP

As noted above, the Debtor LLC is owned by Rebecca Metzgar (60%) and Nalyana Penprachum (40%) and is managed by Rebecca Metzgar's son, Neil Metzgar. The Debtor does not propose or anticipate any change in management or ownership over the Plan term. Mr. Metzgar received an annual salary of $30,000.00 in 2023, and $70,000.00 in 2024[3] and during the Plan term he will continue to be paid at the 2024 rate with any increase limited to a rate in step with the semi-annual cost of living index for Virginia, published by the Council for Community and Economic Research.

---

[3] In 2024 the Debtor reduced its management staff significantly, which placed a much greater burden on Mr. Metzgar who now performs these additional functions.

<u>PROJECTED INCOME AND EXPENSES</u>

The Debtor's projection of its income and expenses for a period covering the Plan term of sixty months is attached as Exhibit A.

<u>PLAN OF REORGANIZATION</u>

The Debtor, PEGASUS RESTAURANT GROUP, LLC., by and through the undersigned counsel hereby proposes the following Plan of Reorganization (Plan) under Subchapter V, pursuant to 11 U.S.C. 1189.

ARTICLE I

<u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>

For the purpose of this Plan claims and interests are placed into the following classes:

<u>Class 1</u>:  Class 1 comprises those creditors who have administrative claims.  This class includes the Debtor's counsel, the Debtor's accountant, the Subchapter V Trustee, and other professionals to the extent that their fees and expenses are approved by the Bankruptcy Court.

<u>Class 2</u> includes all priority claims and is broken into two sub-classes, Class 2(a) and Class 2(b):

Class 2(a): This class includes the priority wage claims of Elena Baluyot ($450.00), Feng You ($1,610.00), Heather Polston ($860.00), Holly Metzger ($5,500.00), and Alexi Naawananuruk ($1,215.00), all of which total $9,635.00.

Class 2(b): This class includes the IRS at $560,000.00[4] and the Virginia Department of Taxation Virginia Department (scheduled at $430,000.00), both of which have non-administrative priority claims for taxes. The claims in this class total approximately $990,000.00.

Class 3: This Class includes the secured claim of Union Funding Source in the amount of $51,226.19.

Class 4: This class includes the debtor's two landlords on its assumed leases, Neuman-Bellewood, LLC and the Edgartown Corporation.

Class 5: This class includes all remaining unsecured claims without priority (see above) and totals $271,357.39.

Class 6: This Class includes the Debtor's equity security holders, Rebecca Metzgar and Nalyana Penprachum.

---

[4] The amount given here is different from what appears on the Proof of Claim filed by the IRS. However, the IRS has estimated the Debtor's unfiled FICA and FUTA liability for seven quarters. These missing returns have been prepared by the Debtor and will shortly be filed.  The amount provided for in this Plan is based on what the Debtor expects to owe once those returns have been received and processed by the IRS.

ARTICLE II

IMPAIRMENT OF CLASSES AND CORRESPONDING VOTING RIGHTS

Impaired Classes: All classes, with the exception of Classes 4 and 6 are impaired by this Plan.

Any class shall have accepted this Plan if the holders of at least two-thirds in amount and more than one-half in number of those voting within that class vote to accept the plan.

ARTICLE III

TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

Part (a)

Class 1: The Class 1 administrative priority claims shall be paid in such amounts as may be approved by the Bankruptcy Court upon Application and Notice, or upon assessment, these claims shall be paid in full as they become due apart from the distribution to other creditors if paid before the Plan's Effective Date, or if paid afterward, as provided for in Article IV.  However, to the extent that the Debtor shall be unable to pay these claims outside the Plan before the Effective Date, they shall be paid from the Plan distributions within nine months, without interest, or as quickly thereafter as possible, *pro-rata*, and ahead of all other classes to be paid inside the Plan. Should this be a non-consensual Plan requiring the Sub-Chapter V Trustee to serve as the distribution agent, then the administrative fee

for that service shall be paid each month from the monthly distribution proposed in this Plan in Article IV.

<u>Class 2</u>: Within eighteen months from the effective date of this Plan the Debtor's manager, Neil Metzgar, shall pay into the Plan the sum of $375,000.00. These funds will first be used to pay the remaining balance owed to the Class 1 claimants (if any), and then shall be used to pay down all Class 2 claims, *pro rata*. The calamints in class 2(a) shall receive interest on their unpaid claims at 6% per annum, while the Class 2(b) claimants shall receive interest on their claims at the statutory rate at the date of confirmation[5], and (except as provided for above) they shall be paid concurrently with all Class 2(b), Class 3, and Class 5 Claims within sixty (60) months from the month following the effective date of the Plan.

<u>Class 3</u>: This creditor shall be paid in full by means of sixty (60) consecutive monthly payments beginning on the month following effective date of the Plan with simple interest at 6% *per annum* on their claim.

<u>Class 4</u>: The Debtor shall pay the claims of its two landlords according to their leases and outside of the Plan.

<u>Class 5</u>: These claimants will receive a *pro rata*

---

[5] Based on the current statutory rates, it is expected that the claim of the IRS will receive interest at 8%, while the claim of the Virginia Department of Taxation will receive interest at 6%.

distribution (without interest) over sixty months (60) from the monthly Plan payments not needed to pay (*pro rata*) the claims of Classes 1, 2, and 3, as described above.

The Debtor anticipates, but cannot guarantee, that based on the best information available to it at the time this Plan is filed, that the Class 5 creditors will receive a distribution of not less than approximately 15% of their claims. See "Liquidation Analysis", above.

<u>Class 6</u>: The claimant in this class shall retain their equity security interests, but shall receive no other distribution under the Plan.

## ARTICLE IV

### EXECUTION, EFFECTIVE DATE, AND TERM OF THE PLAN

(1) The term of the Plan shall be sixty (60) consecutive months from the month following the effective date of the Plan. It is anticipated that the debtor's income shall be sufficient to make all payments required aside from the bonus payment made by Neil Metzgar.  The Debtor shall act as its own disbursing agent if such is permissible under 11 U.S.C. 1194.

(2) The effective date of the Plan shall be the 14th day after the entry of an Order of Confirmation.

(3) Aside from the amount to be paid by Neil Metzgar, as described above, the claims designated to be paid inside the Plan shall be paid from sixty consecutive monthly installments of

$17,000.00 for sixty months (60) beginning on the middle day of the month next following the effective date of the Plan.

(4) The failure of the Debtor to make any of the monthly payments or other amounts provided for above shall constitute a default, and the claimants entitled to such distribution shall have the right to enforce such payments under applicable non-bankruptcy law, or to apply to the court for such remedies as may be permitted under the law.

(5) The Debtor, or any other party in interest, shall have the right to object to any Claim any time, but not later than one-hundred and twenty (120) days after the effective date. Any claim not objected to on or before one-hundred and twenty days (120) after the effective date will be deemed finally allowed as provided for in this Plan and/or as may be proper pursuant to Section 502(a) of the Code. The Debtor reserves the right to object to any Claim, regardless of whether the debt was scheduled as disputed, unliquidated, or contingent, and regardless of whether the schedules list the claim as allowed. Payment will not be made to any claimant whose claim is objected to by the Debtor (but any distribution to that claimant shall be held in reserve pending resolution of the objection.)

(6) If any claimant shall fail to cash or deposit its check within ninety (90) days after the mailing of a payment sent by the Debtor to the claimant's scheduled address after the

effective date of the Plan, then those funds shall revert to the Debtor.

(7) If any claimant shall fail to cash or deposit within ninety (90) days three consecutive checks sent to the claimant's scheduled address had not been cashed or deposited, then no further payments shall be made to that claimant, and that claimant's share shall be distributed to the other claimants as provided for in this Plan on a *pro rata* basis from that point.

If any monthly distribution to a claimant under this Plan shall fall to an amount less than $75.00, then those payments may be made every two, three, or four months at the practical discretion the Debtor or disbursing agent.

(8) If this becomes a consensual plan, the debtor shall receive a discharge upon the confirmation of the Plan. If this shall become a non-consensual plan, as soon as practicable after completion by the Debtor of all payments due within the term of the plan, the court shall grant the debtor a discharge under 11 U.S.C. 1192 of all debts provided for under this Plan, and all other debts allowed under 11 U.S.C. 503 and 11 U.S.C. 507(a)(8) of this title and provided for in the plan.

(9) The monthly payments under this Plan shall commence on the middle day of the first month next following the Plan's effective date.

ARTICLE V

CRAMDOWN

The Debtor hereby invokes the "cramdown" entitlement under 11 U.S.C. 1129(b) and 11 U.S.C. 1191(b),(c),and (e) of the Bankruptcy Code.  That is, as long as the plan does not discriminate unfairly, and is fair and equitable with respect to any class of claims or interest that is impaired and has not accepted the Plan, and so long as the Plan provides that all of the projected disposable income of the Debtor to be received in the sixty months period beginning on the date that the first payment is due under the Plan will be applied to make payments under the Plan; or the value of the property to be distributed under the plan in the five-year period beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the Debtor, the Court may confirm the Plan.

ARTICLE VII

RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction (along with any other court of competent jurisdiction) from and after the confirmation date for the purpose of determining all disputes and other interests arising under the plan, or such disputes as may exist between the Debtor and the claimants as a result of the Plan.

Dated: September 5, 2024

          /s/Neil Metzgar
          Neil Metzgar
          Designee for the Debtor,
          Pegasus Restaurant Group, LLC

/s/ Richard G. Hall
RICHARD G. HALL
Counsel for the Debtor
601 King Street
Suite 301
Alexandria, Virginia 22314
703/256-7159
VA Bar No. 18076
Richard.hall33@verizon.net